**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.S.-1, C.S., E.S., and J.S.**

**No. 21-0837** (Kanawha County 19-JA-607, 19-JA-608, 19-JA-609, and 19-JA-610)

**MEMORANDUM DECISION**

Petitioner Mother A.S.-2, by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's September 17, 2021, order terminating her parental rights to A.S.-1, C.S., E.S., and J.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Bryan B. Escue, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner exposed the children to domestic violence, substance abuse, and dangerous conditions inside the home. The DHHR alleged that it received a referral that law enforcement officials attempted to enter the parents'[2] home during a domestic violence altercation that involved the use

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, they will be referred to as A.S.-1 and A.S.-2, respectively, throughout this memorandum decision.

[2]Petitioner is the mother of all four children. At the time, all the children lived with petitioner and the father of A.S.-1 and C.S.

of a firearm, but that petitioner denied them entry to the home upon their arrival. The DHHR alleged that petitioner was arrested for obstruction in connection with the incident. According to the petition, the children, then between the ages of three and eight years old, were at the home when the domestic violence altercations occurred. The DHHR alleged that the children often stayed at a great-grandmother's residence as a result of the parents' frequent domestic violence. The DHHR alleged that the father was out of incarceration pursuant to a bond at the time of the petition. According to the petition, the father was arrested for stealing a birthday cake and assaulting an employee at a local restaurant. The DHHR also alleged that the father was involved in an altercation with petitioner over her involvement with another man. The father and the other man were also involved in an altercation, including the use of firearms, inside the parents' home.

According to the petition, a Child Protective Services ("CPS") worker spoke to petitioner, who admitted that she had domestic violence altercations with the father and that law enforcement officers were at their home as a result. Petitioner informed the CPS worker that the father was serving home incarceration, admitted that she was still in a relationship with him, and stated that she intended to stay in her relationship. Petitioner denied that she or the father engaged in substance abuse and denied that the children had been exposed to domestic violence in the home. Next, the CPS worker interviewed J.S., then eight years old, who denied witnessing domestic violence in the home but acknowledged that the parents often fought. The child further denied witnessing substance abuse and stated that he felt safe inside the home. The CPS worker also interviewed C.S., then four years old, who disclosed that the parents often fought, and that petitioner would contact law enforcement during the altercations. The CPS worker also spoke to a family relative who stated that the father was "very violent." The relative disclosed that the father physically abused petitioner on multiple prior occasions and that while the children would be safe with petitioner, they would not be safe around the father. According to the petition, another relative stated that the father had been arrested on several occasions for violent crimes. Finally, the CPS worker interviewed the father, who denied substance abuse and physical domestic violence inside the home. He stated that petitioner and he were separated at the time, but that petitioner still allowed the children to visit with him often. The DHHR also included a chronological list of domestic violence arrests and other incident reports involving both parents in the petition. The next month, petitioner waived her preliminary hearing, and the circuit court ordered the DHHR to provide petitioner with services and ordered petitioner to have no contact with the father.

After several continuances and hearings, the circuit court held an adjudicatory hearing in August of 2020 wherein petitioner moved the court to grant her a preadjudicatory improvement period. The DHHR and guardian objected to the motion, which the circuit court denied. A CPS worker testified in support of the allegations in the petition. Specifically, the worker testified that petitioner admitted that she was the victim of domestic violence by the father of A.S.-1 and C.S. The worker also stated that petitioner admitted that law enforcement was often at her home in relation to domestic violence incidents between her and the father. Finally, the worker testified that petitioner admitted that the father was serving home incarceration, that she remained in a relationship with the father, and that the children had witnessed domestic violence in the home. The circuit court also noted the children's disclosures to the CPS worker and the chronological incident reports from law enforcement. As a result, the circuit court adjudicated petitioner as an abusing parent. Following her adjudication, the children were returned to petitioner's physical custody on a trial basis.

In November of 2020, the circuit court held a hearing wherein the DHHR moved to terminate petitioner's parental rights. The DHHR submitted a summary to the court that indicated petitioner had violated the no contact order by staying with the father on several occasions. According to the summary report, petitioner and the father had remained in a relationship together for periods of time over the last several months. After petitioner's continued relationship with the father came to light, the DHHR again removed the children from petitioner's home. The DHHR noted that the father had been arrested for burglary and attempting to disarm law enforcement since a prior hearing. The DHHR indicated that petitioner had been participating in some drug screens, and enrolled in domestic violence classes and parenting and life skills classes. According to the summary report, C.S. and J.S. indicated they did not wish to live with either parent.

The circuit court held a final dispositional hearing in August of 2021 during which the DHHR renewed its motion to terminate petitioner's parental rights. In support of its motion, the DHHR presented a summary report from the prior month indicating that petitioner was in a relationship with a new boyfriend, who had been arrested for domestic violence after an incident with her. According to the summary report, petitioner ceased participating in random drug screens and was only sporadically attending her parenting and adult life skills classes. Further, a CPS worker testified that petitioner continued to involve herself in domestic violence relationships and was noncompliant with services.

At the conclusion of the dispositional hearing, the circuit court found that petitioner failed to make sufficient efforts to rectify the conditions of abuse and neglect and follow through with the case plan and other services. Ultimately, the court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The court terminated petitioner's parental rights by order entered on September 17, 2021. It is from this dispositional order that she now appeals.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[3]A.S.-1 and C.S.'s father's parental rights were terminated below. E.S. and J.S.'s father voluntarily relinquished his parental rights below. The permanency plan for A.S.-1 and E.S. is adoption in their respective foster homes. The permanency plan for C.S. and J.S. is adoption by their aunt.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period because she "complied with services and was making progress." Petitioner contends that she was struggling as a victim of domestic violence and that she had demonstrated that she wanted to end her relationship with the father of A.S.-1 and C.S., who had physically harmed her. Petitioner points to her participation in parenting and domestic violence classes as evidence of this. As such, petitioner asserts that she showed sufficient improvement to warrant the granting of an improvement period. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

While petitioner avers that she showed some compliance with services, the record shows that petitioner failed to show sufficient compliance throughout the proceedings to warrant the granting of an improvement period. As noted above, petitioner was provided with services aimed at correcting her issues with allowing inappropriate partners around the children. However, the DHHR removed the children from petitioner's home during the proceedings after she continued exposing the children to inappropriate individuals such that it endangered the children. While petitioner claims that she wanted to end her relationship with the father of A.S.-1 and C.S., she also entered into a relationship with a new partner, who was also arrested for domestic violence. As such, the evidence put forth by the DHHR belies petitioner's claims that she was ending her relationships with inappropriate partners. This is a credibility determination that we decline to disturb on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Further, petitioner ceased fully participating in drug screens as well as her parenting and adult life skills classes. As such, by continuing to involve herself in violent relationships and only sporadically participating in services, petitioner has failed to make any substantial changes to her circumstances despite the DHHR's prior interventions and services. Therefore, it is clear that petitioner was unlikely to fully participate in an improvement period, and we therefore find no error in the circuit court's decision.

We similarly find no error in the termination of petitioner's parental rights, given that West Virginia Code § 49-4-604(c)(6) permits termination of parental rights when there is no reasonable likelihood that the conditions of abuse can be substantially corrected in the near future and when termination of parental rights is necessary for the children's welfare. According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future includes when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Here, the evidence overwhelmingly supports this finding, as set forth above. Moreover, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment